UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**AMIN M. AL SAIDI,**

    **Plaintiff,**

v.

**CAROL JENIFER, District Director,
U.S. CITIZENSHIP & IMMIGRATION
SERVICES,**

    **Defendant.**

_____/

Case No. 05-71832

HONORABLE DENISE PAGE HOOD

**MEMORANDUM OPINION AND ORDER AND NOTICE OF STATUS CONFERENCE**

**I.    BACKGROUND**

Plaintiff, Amin M. Al Saidi, is a citizen of Yemen and has been a lawful permanent resident of the United States since 1998. Defendant, Carol Jenifer, is the District Director of the United States Citizenship & Immigration Services ("CIS") and is responsible for processing of naturalization applications filed in the Detroit CIS district.

On September 29, 2003, Plaintiff filed an application for naturalization and was interviewed by CIS on June 22, 2004. CIS failed to make a determination on Plaintiff's naturalization application within 120 days of this interview. Plaintiff filed the instant action on May 10, 2005 pursuant to 8 U.S.C. §1447(b), seeking a judicial determination of his naturalization application and a declaration that he is entitled to be naturalized as a citizen of the United States.

Defendant asserts that a determination on Plaintiff's application has been deferred due to Plaintiff's check in the Department of Homeland Security-managed Interagency Border Inspection

1

System ("IBIS"), which revealed a "match" or "hit" for a possible terrorism connection. The Joint Terrorism Task Force ("JTTF") took possession of Plaintiff's file on June 22, 2004, in connection with an independent inquiry of Plaintiff by the Federal Bureau of Investigation ("FBI"). Plaintiff's file was returned to CIS without any definitive resolution of the national security issues. However, Defendant asserts that the FBI's inquiry revealed information that was inconsistent with information Plaintiff provided to CIS in connection with his application. To address these purported inconsistencies, the CIS sent Plaintiff a request to return for an interview on November 18, 2005 regarding his naturalization application, and for Plaintiff to bring his 2004 income tax returns and other documents. Plaintiff states in his Response to Defendant's Motion to Dismiss that he appeared as requested. Furthermore, Plaintiff states that he was fingerprinted and submitted the requested documents and no criminal or civil charges have been issued against him. As will be more fully set forth below, when Plaintiff commenced this action, the CIS lost its jurisdiction over his application, and therefore the agency lacked the authority to compel Plaintiff's attendance at this follow up interview.

On October 31, 2005, Defendant filed a Motion to Dismiss for Lack of Jurisdiction with Brief in Support under Fed. R. Civ. P. 12(b)(1). On November 23, 2005, Plaintiff filed his Response to Defendant's Motion to Dismiss and the Court scheduled a hearing on the matter for December 14, 2005.

**II.     APPLICABLE LAW AND ANALYSIS**

The central issue in the present motion is the meaning of "examination" under 8 U.S.C. §1447(b). Specifically, whether Plaintiff's "interview" on June 22, 2004 began the 120 day period within which the CIS had to make a determination upon Plaintiff's naturalization application and

whether its failure to meet this deadline provides this Court with exclusive jurisdiction over Plaintiff's naturalization application upon the filing of Plaintiff's complaint. 8 U.S.C. § 1447(b).

Before a person may be naturalized, an "examination" must be conducted to determine the applicant's admissibility for naturalization pursuant to 8 U.S.C. §1446. If CIS fails to make a determination within 120 days after this "examination," judicial review of the application in federal district court is provided for under 8 U.S.C. §1447(b), which states that:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter. *Id*.

It is Plaintiff's contention that his "interview" on June 22, 2004 was the date of the "examination" and that 120 days have passed without a determination by CIS. Defendant argues the "examination" required under §1446 is not a single event, but a process that includes not only the applicant's interview, but also the FBI background check. Since Plaintiff's background check has not been resolved, the 120 day period has not expired, and this Court lacks subject matter jurisdiction to review Plaintiff's naturalization application.

It should be noted that this is an issue of first impression in our Circuit, and only the Ninth Circuit has explicitly spoken on the issue. See *U.S. v. Hovsepian, et al*., 359 F. 3d 1144 (9th Cir. 2004). There have been a handful of district court opinions on the issue, only one of which supports Defendant's argument.

Defendant relies on *Danilov v. Aguirre*, 370 F. Supp. 2d 441, 443 (E.D. Va. 2005), to support the argument that the examination in §1446 "is not a single event, but instead is essentially a process

3

the agency follows to gather information concerning the applicant." However, the *Danilov* court ignored the plain text of §1447(b), as well as its implementing regulations. See *El-Daour v. Chertoff*, 2005 U.S. Dist. LEXIS 18325 (W.D. Pa. 2005). The language of the statute, "[i]f there is a failure to make a determination ... before the end of the 120-day period after the *date* on which the examination is *conducted* ...," suggests "that the *examination* occurs on a particular, identifiable, date," whereas "[a] 'process' does not occur on one particular and identifiable date." *El-Daour*, supra at **7-8. The *Danilov* court also mischaracterized the regulation found in 8 C.F.R. §335.2. The court stated that the regulation requires the FBI to "complete a criminal background investigation of an applicant *before* the examination may be completed" and characterized this investigation "as part of the examination process." *Danilov*, 370 F. Supp. 2d at 444 (emphasis in original). However, the actual language of 8 C.F.R. §335.2 states:

> (b) Completion of criminal background checks *before* examination. The Service will notify applicants for naturalization to appear before a Service officer for *initial examination* on the naturalization application *only after* the Service has received a definitive response from the Federal Bureau of Investigation that a *full criminal background check* of an applicant has been *completed*. A definitive response that a full criminal background check on an applicant has been completed includes . . .

*Id.* (emphasis added). The language expressly states that the required "examination" is not to take place until after completion of the FBI background check. The "examination" cannot then be a "process" including the interview and background check of the applicant, since the "examination" of the applicant is not to take place until the CIS receives a "definitive response" from the FBI that the background check is complete. Defendant's argument that the IBIS check on petitioner is sufficiently analogous to the required FBI check further undercuts Defendant's argument, in that the CIS should have completed Plaintiff's IBIS check before conducting his examination. Defendant appears to have failed to follow the agency's own regulations concerning the procedure for

4

determination of naturalization applications, and this is not a sufficient excuse for delaying the processing of Plaintiff's application. See *Castracani v. Chertoff*, 377 F. Supp. 2d. 71, 74-75 (D.D.C. 2005).

Additionally, other regulations show that the 120 day period was meant to begin running on the date of the "interview." For instance, if deficiencies in an application are discovered during an "examination," the CIS may reschedule one reexamination under timing constraints pursuant to 8 C.F.R. § 335.3(b), which states that, "[t]he reexamination on the continued case shall be scheduled within the 120-day period after the initial examination . . ." This regulation must be read in connection with 8 C.F.R. § 312.5(b), which states that,

> Before an applicant may request a postponement of the second examination to a date that is more than 90 days after the initial examination, the applicant must agree in writing to *waive the requirement* under section 336 of the Act *that the Service must render a determination on the application within 120 days from the initial interview,* and instead to permit the Service to render a decision within 120 days from the second interview.

*Id*. (Emphasis added). See also *Angel v. Ridge*, 2005 U.S. Dist. LEXIS 10667(S.D. Ill. 2005). The *Danilov* court failed to address these regulations in rendering its decision that the "examination" required under §1446 is a "process." If the "examination" is a "process," then the above waiver requirement in §312.5(b) would be unnecessary.

Lastly, the definition of "examination" in §1447(b) urged by Defendant is contrary to the intention of Congress in passing the Immigration and Nationality Act. "A central purpose of the statute was to reduce the waiting time for naturalization applicants." *Hovespian*, 359 F.3d at 1163. (Quoting H.R. Rep. No. 101-187, at 8 (1989); 135 Cong. Rec. H4539-02, H4542 (1989) (statement of Rep. Morrison). "Congress intended to streamline the process of applying for naturalization and intended to reduce the burdens on courts and the INS." *Id. (*Quoting H.R. Rep. No. 101-187, at 8;

5

135 Cong. Rec. H4539-02, H4543 (statement of Rep. Smith). Also, "[r]epresentatives drafting the statute were concerned with the consistency and fairness of naturalization decisions." *Id.* at 1164. (Quoting H.R. Rep. No. 101-187, at 12-13). See also, *Zaranska v. U.S. Dep't of Homeland Sec.*, 2005 U.S. Dist. LEXIS 17559 (E.D .N.Y., July 18, 2005) (Adopted by *Zaranska v. United States Dep't of Homeland Sec.*, 2005 U.S. Dist. LEXIS 27134 (E.D. N.Y., Nov. 10, 2005). Based on the above policy considerations, the Ninth Circuit held that "Section 1447(b) allows the district court to obtain exclusive jurisdiction over those naturalization applications on which the INS fails to act within 120 days if the applicant properly invokes the court's authority." *Id.*

The plain language of the statute, the implementing regulations and policy considerations under §1447(b) stripped CIS of its jurisdiction to render a determination on Plaintiff's naturalization application when Plaintiff filed his Complaint on May 10, 2005. The statute expressly gives this Court the authority to "either determine the matter or remand the matter with appropriate instructions, to the Service to determine the matter."

Defendant argues in the alternative that this Court should remand the matter back to CIS, if this Court determines that it does have subject matter jurisdiction. Defendant basis this argument on the fact that the very reason for the delay in making a determination on Plaintiff's application is the outstanding IBIS background check. This factor is essential to the ultimate determination of whether Plaintiff should be naturalized. Defendant's argument is supported by the holdings in *El-Daour*. The court found subject matter jurisdiction existed pursuant to §1447(b), but elected to remand the matters back to CIS. In *El-Daour*, the court stated,

> The very reason that the CIS did not process El-Daour's application within 120 days of his examination prevents me from deciding his application. The FBI has not yet completed the criminal background check. This is a vital piece of information. A court is not equipped to conduct such an investigation. I do not have the resources

> at my disposal to determine whether El-Daour presents a risk to national security or to public safety.

*El-Daour*, 2005 U.S. Dist. LEXIS 18325 at **14.

However, in this case the Government has not presented sufficient reasons for the delay in submitting the Plaintiff's file to CIS headquarters nor why the matter was submitted to CIS after the interview. According to the Government, the Plaintiff's file was submitted only shortly before the Government's motion was filed in this case on October 31, 2005, and long after the Plaintiff's interview on June 22, 2004. The Government's attorney indicated there was no procedure for expediting the process or was not aware of such procedure.

"Section 1447(b) allows the district court to obtain exclusive jurisdiction over those naturalization applications on which the INS fails to act within 120 days if the applicant properly invokes the court's authority." *Hovsepian*, 359 F.3d at 1164. Allowing CIS to retain jurisdiction where CIS has failed to act frustrates Congress' intent to require CIS to make a determination within 120 days of an examination. *Id*. at 1163. This Court exercises that exclusive jurisdiction.

A status conference in this matter shall be held on **Monday, January 9, 2006, at 4:00 p.m.** Dates of the hearing and to submit materials will be set at the conference.

Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss for Lack of Jurisdiction **[Docket No. 10, filed October 31, 2005]** is DENIED.

                                                        /s/ DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge

DATED: December 23, 2005